UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| FARMERS INSURANCE COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: 2:22-cv-01561-JHE |
| ) | |
| SEMAR SRL, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Defendant SEMAR srl ("Semar") moves to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. (Doc. 4). Plaintiff Farmers Insurance Company ("Farmers") opposes that motion and argues in the alternative that the court should transfer venue to the United States District Court for the District Northern District of Indiana. (Doc. 16). Farmers has also moved for jurisdictional discovery and to defer ruling on Semar's motion to dismiss until jurisdictional discovery is conducted. (Doc. 14). Semar opposes that motion. (Doc. 17). For the reasons stated below, Farmers' motion for jurisdictional discovery is **GRANTED**, and the undersigned will defer ruling on Semar's motion to dismiss.

**I. Background**

This case arises out of a house fire that occurred in Birmingham, Alabama on January 26, 2020. (Doc. 1-1 at 3). A subsequent investigation of that fire concluded it occurred when an electrical charger for a child's toy malfunctioned. (*Id.* at 3–4). Farmers, who insured the homeowners, alleges Semar manufactured the charger and was liable under various theories for the resulting damages. (*Id.* at 3–9).

Farmers filed its complaint on January 25, 2022, in the Circuit Court of Jefferson County, Alabama. (*Id.* at 3). Farmers served Semar (an Italian company headquartered in Castelfidardo, Italy, and organized as a società responsabilità limitata (srl), a form of limited liability company[1]) via the Hague Service Convention on November 16, 2022. (Doc. 1 at 1, 4). On December 14, 2022, Semar removed the case to this court on the basis of diversity of citizenship. (Doc. 1).

On December 21, 2022, Semar filed its motion to dismiss. (Doc. 4). In support, Semar attached the declaration of Michele Palmieri, Semar's legal representative, indicating that Semar lacks any direct contacts with Alabama and sold the charger at issue exclusively to Peg Perego U.S.A., which is located in Indiana. (Doc. 4-1).

## II. Legal Standard

A court may exercise personal jurisdiction over a foreign defendant so long as two conditions are met. First, the court must "determine whether the exercise of jurisdiction is appropriate under the forum state's long-arm statute." *Mutual Service Ins. Co. v. Frit Industries, Inc.*, 358 F.3d 1312, 1319 (11th Cir. 2004) (citation omitted). Second, the court must "examine whether the exercise of personal jurisdiction over the defendant would violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution, which requires that the defendant have minimum contacts with the forum state and that the exercise of jurisdiction over the defendant does not offend 'traditional notions of fair play and substantial justice." *Id.* (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)). The plaintiff bears the ultimate burden

---

[1] Semar is wholly owned by Palmieri Holding srl, which is owned by Italian citizens Giancarlo Palmieri and Gabriella Stacchiotti. (Doc. 1 at 4).

of establishing personal jurisdiction is present. *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1217 (11th Cir. 2009).

### III. Analysis

Alabama's long-arm rule is Alabama Rule of Civil Procedure 4.2(a)(2)(I), which "extends the jurisdiction of this state's courts to the permissible limits of due process." *Martin v. Robbins*, 628 So. 2d 614, 617 (Ala. 1993). *See also Ruiz de Molina v. Merritt & Furman Ins. Agency, Inc.*, 207 F.3d 1351, 1355–56 (11th Cir. 2000) (citing Ala. R. Civ. P. 4.2(a)(2)(I)) ("Alabama permits its courts to exercise jurisdiction over nonresidents to the fullest extent allowed under the Due Process Clause of the Fourteenth Amendment to the Constitution."). Therefore, the only question for the court to answer to determine whether Semar is subject to personal jurisdiction in Alabama is whether it comports with the federal due process standard.

The Supreme Court has recognized two types of personal jurisdiction: "'general' (sometimes called 'all-purpose') jurisdiction and 'specific' (sometimes called 'case-linked') jurisdiction." *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 137 S. Ct. 1773, 1780 (2017). General jurisdiction exists when the corporation's "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum state." *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014). To determine whether specific jurisdiction exists, a court must examine "(1) whether the plaintiff's claims 'arise out of or relate to' at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant 'purposefully availed' himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with 'traditional notions of fair play and substantial justice.'" *Louis Vuitton Malletier,*

*S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–75 (1985)).

Semar denies that this court has either general or specific personal jurisdiction over it. (*See* doc. 4). The affidavit attached to Semar's motion supports that Semar lacks contacts with Alabama in various ways. Specifically, declarant Palmierei states Semar: (1) has never been licensed to do business in Alabama and does not have a registered agent for service of process in Alabama (doc. 4-1 at ¶ 7); (2) has never had a business office in Alabama (or the United States), does not have a telephone listing in Alabama, does not own, lease, or use real or personal property in Alabama (or the United States), and does not have bank accounts in Alabama (or the United States) (*id.* at ¶ 8); (3) does not pay taxes in Alabama (*id.* at ¶ 9); (4) does not employ anyone in Alabama (*id.* at ¶ 10); does not do or solicit business in Alabama (*id.* at ¶ 11); does not derive substantial revenue or benefit from goods, materials, or services used or consumed in Alabama (*id.* at ¶ 12); does not own stock or have any other ownership interest in a United States company (*id.* at ¶ 13); does not make direct sales to Alabama distributors or the general public in Alabama and has not contracted with an Alabama entity (*id.* at ¶ 14); and has never been involved in litigation in Alabama or the United States (*id.* at ¶ 15). Instead, Palmieri states that Semar sells the chargers at issue in this case exclusively to Peg Perego U.S.A. in Indiana and has no control over what happens to them (or to the products to which they are added) after that sale. (*Id.* at ¶¶ 16–18).

Farmers has not come forward with contradictory evidence. Instead, it states that it "should be entitled to explore facts" to refute Semar's contentions, including Semar's business relationships with Peg Perego, U.S.A. and others. (Doc. 14). Farmers contends such targeted discovery would enable it to provide "sufficient facts from which the Court could make an informed decision" regarding personal jurisdiction over Semar. (*Id.* at 3–4).

4

A federal court may order discovery to explore jurisdictional questions. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 n.13 (1978). The Eleventh Circuit has stated that ""[i]f the jurisdictional question is genuinely in dispute and the court cannot resolve the issue in the early stages of the litigation . . . [then] discovery will certainly be useful and may be essential to the revelation of facts necessary to decide the issue." *Eaton v. Dorchester Dev., Inc.*, 692 F.2d 727, 730 (11th Cir. 1982). In *Eaton*, the Eleventh Circuit held that a plaintiff "must be given an opportunity to develop facts sufficient to support a determination on the issue of jurisdiction" before dismissing a case for lack of jurisdiction.[2] *Id.* at 731. "[W]hen facts that go to the merits and the court's jurisdiction are intertwined and genuinely in dispute, parties have a 'qualified right to jurisdictional discovery . . . .'" *American Civil Liberties Union of Florida, Inc. v. City of Sarasota*, 859 F.3d 1337, 1341 (11th Cir. 2017) (quoting *Eaton*, 692 F.2d at 729 n.7). "[A] district court abuses its discretion if it completely denies a party jurisdictional discovery . . . unless that party unduly delayed in propounding discovery or seeking leave to initiate discovery." *Id.* (citing *Posner v. Essex Ins., Co.*, 178 F.3d 1209, 1214 n.7 (11th Cir. 1999)) (affirming denial of untimely motion for jurisdictional discovery).

Here, although Farmers missed its original deadline to respond to the motion to dismiss, it subsequently moved for leave to file a response out of time. (Doc. 9). The undersigned permitted Semar an opportunity to oppose that motion (*see* doc. 12), but Semar did not do so. The undersigned then granted Farmers' motion (doc. 13), after which Farmers filed a timely motion

---

[2] The dispute in *Eaton* concerned subject-matter jurisdiction, but there is no apparent reason to distinguish it from personal jurisdiction as it pertains to discovery.

for jurisdictional discovery (doc. 14).  On these facts, the undersigned cannot say that Farmers unduly delayed its request for jurisdictional discovery.

Semar does not address the timeliness of Farmers' request, deny that a court may order jurisdictional discovery, or contend that jurisdictional discovery would be futile.  Instead, Semar's main argument is that jurisdictional discovery is "not an unconditional right that permits plaintiff to seek facts that would ultimately not support a showing of personal jurisdiction." (Doc. 17 at 1–2) (quoting *Hinkle v. Cont'l Motors, Inc.*, 268 F. Supp. 3d 1312, 1322 (M.D. Fla. 2017)).  Semar contends Farmers' failure to supply evidence in support of its request for jurisdictional discovery shows there is no genuine dispute over jurisdictional facts and therefore dooms Farmers' request. (*Id.* at 1–4).

Semar relies exclusively on *Hinkle*, a case in which "an aircraft purchased from a Minnesota corporation, sold by a Virginia salesperson, [and] delivered in Minnesota . . . crashed in South Carolina."[3]  268 F. Supp. 3d at 1317.  The pilot (a Florida resident) and his passengers, all of whom were injured in the crash, sued, *inter alia*, the aircraft's manufacturer and the manufacturer of an allegedly defective sensor that contributed to the crash.  *Id.* at 1318.  Both of those defendants moved to dismiss for lack of personal jurisdiction.  *Id.*  Applying Florida's long-arm statute, which enumerates particular acts supporting specific jurisdiction and contains a separate test for general jurisdiction, the court found neither type of jurisdiction existed based on the facts in the plaintiffs' complaint and the evidence submitted by the moving defendants.  *Id.* at

---

[3] Semar also cites *C.M.B. Foods, Inc. v. Corral of Middle Georgia*, 396 F. Supp. 2d 1283, 1286 (M.D. Ala. 2005), and *Internet Solutions Corp. v. Marshall*, 557 F.3d 1293, 1296 (11th Cir. 2009), for the inadequacy of Farmers' showing as to jurisdictional discovery.  (Doc. 17 at 3-4).  However, neither of those cases concerned a request for jurisdictional discovery; they relate to a plaintiff's showing to defeat a Rule 12(b)(2) motion to dismiss.

1320–27.  The court also found that the plaintiff's request for jurisdictional discovery was due to be denied because (1) they never formally moved for jurisdictional discovery and (2) even if they had, they failed to "submit affidavits or any other competent evidence that rebutted [the moving defendants'] affidavits," which meant they had not established a genuine dispute regarding jurisdiction.  *Id.* at 1327–28.

*Hinkle* is not binding on the court, and it does not appear that any other court has followed its reasoning concerning a plaintiff's purported burden of production to simply *request* jurisdictional discovery.  The only case citing this portion of *Hinkle* is *Empire Art Direct, LLC v. Crystal Art of Fla., Inc.*, No. 17-CV-61601, 2017 WL 6270036, (S.D. Fla. Dec. 8, 2017), in which the court distinguished *Hinkle* on the basis that, unlike the *Hinkle* plaintiff, the plaintiff in that case (as in this case) had specifically requested jurisdictional discovery.  *Id.* at *1.  And the undersigned is not convinced *Hinkle* appropriately applied *Eaton*.  Specifically, the undersigned doubts a "genuine dispute" means that the plaintiff shoulders a burden to come forward with evidence refuting the defendant's even before jurisdictional discovery is permitted and should be denied jurisdictional discovery in the absence of that evidence.  *See, e.g., Funez v. CMI Leisure Mgmt., Inc.,* 482 F. Supp. 3d 1252, 1255 (S.D. Fla. 2020) (finding dispute genuine because "this is not a scenario where Plaintiff included a conclusory request for discovery without any explanation as to how the information sought was relevant to jurisdiction"); *Wolf v. Celebrity Cruises, Inc.*, 683 F. App'x 786, 792 (11th Cir. 2017) (affirming denial of jurisdictional discovery when the plaintiff's "general request for jurisdictional discovery—made over four months after filing his complaint and buried within his response to OCT's motion to dismiss—did not specify what information he sought or how that information would bolster his allegations.").

In any case, the jurisdictional question in this case relates to matters entirely within Semar's knowledge and control.  "A plaintiff faced with a motion to dismiss for lack of personal jurisdiction is entitled to reasonable discovery, lest the defendant defeat the jurisdiction of a federal court by withholding information on its contacts with the forum." *El-Fadl v. Cent. Bank of Jordan*, 75 F.3d 668, 676 (D.C. Cir. 1996), *abrogated on other grounds by Samantar v. Yousuf*, 560 U.S. 305 (2010).  At this juncture, the prudent course is to permit limited and targeted jurisdictional discovery concerning the specific topics Farmers has identified: "facts regarding Defendant's business relationship with Peg Perego, U.S.A., the Indiana entity to which it claims to have sold and shipped the subject charger . . . as well as any agreements it had with Peg Perego and any other sellers or distributors involved in marketing or selling Defendant's product in Alabama." (Doc. 14 at 3–4).  To that end, the parties should confer and agree on a jurisdictional discovery plan, keeping in mind the limited nature of the discovery permitted.  Unless the parties request otherwise, the undersigned expects the parties to complete jurisdictional discovery no later than 60 days from reaching an agreement on its scope.

### IV. Conclusion

Farmers' motion for jurisdictional discovery (doc. 14) is **GRANTED**.  The parties are **DIRECTED** to confer and file a joint status report containing their jurisdictional discovery plan by **March 28, 2023**.  The parties must complete jurisdictional discovery no later than **May 29, 2023**.  Semar may file a supplemental motion to dismiss by **June 12, 2023**.  The undersigned will set a briefing schedule on any supplemental motion to dismiss by separate order.

DONE this 14th day of March, 2023.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE